**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Docket no. 2:15-cr-27-GZS |
| MARCO GORDON, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER IN RESPONSE TO FIRST CIRCUIT REMAND**

This matter is before the Court as a result of the First Circuit's December 12, 2016 Order (ECF No. 384), which directed this Court to further address the factual basis for its finding that Gordon qualified for a two-point enhancement under U.S.S.G. § 2D1.1(b)(15)(E), also known as the livelihood enhancement. Specifically, the First Circuit seeks factual clarification on the basis for the Court's determination that Gordon derived income from the pattern of criminal conduct that exceeded $14,500 in a twelve-month period.

As directed by this Court, the parties filed supplemental briefs on this issue (ECF Nos. 392 & 393). In their briefs, both sides took the position that the Court should take no further evidence on this issue. See Def. Brief (ECF No. 392) at 5; Gov't Brief (ECF No. 393) at 2. Rather, both sides proposed various factual findings that the Court could make in light of the PSR and evidence received at sentencing.

Having considered these proposed factual findings, along with the entire record that was before the Court at the November 6, 2015 sentencing, the Court makes the following findings with respect to the livelihood enhancement:

(1) Giving Defendant the full benefit of the Government's concession that drug quantity should be capped at 839 grams for this conspiracy, which lasted fifteen months, the preponderance of the evidence readily supports a finding that the conspiracy distributed 671.2 grams of cocaine base for the twelve-month period from January 9, 2014 to January 9, 2015.

(2) The conspiracy sold "pieces" or "rocks" of cocaine base for $40 a piece. Each piece weighed at least 0.2 grams and no more than 0.5 grams. (See PSR ¶¶ 10 (noting "two baggies" totaling 0.58 grams were sold for $90); 21 (noting 0.31 grams found in Defendant's pocket); 27 (noting "rocks weighed approximately 0.5 grams"); 30 (0.2 gram per piece).)[1]

(3) Using the reasonable estimate of 0.3 grams per rock, the conspiracy would have distributed at least 2,237 rocks and thereby grossed approximately $89,480 ($40 per rock) during the one-year period in question.

(4) When agents executed the search warrant that led to Gordon's arrest on January 9, 2015, agents found $990 dollars and 0.31 grams of cocaine base in Gordon's pocket. An additional $3,425.46 was found in the apartment near Gordon as well as 183.6 grams of cocaine base. (PSR ¶ 21.)

(5) Again using the estimate of 0.3 grams and $40 per rock, the Court concludes that the estimated street value of the cocaine base seized on January 9, 2015 was $24,520. Adding the cash found in the apartment, the "snapshot" of the gross proceeds of the

---

[1] While Defendant proffers that the Court could use the higher 0.5 grams per piece estimate, he also starts with a higher overall quantity (1,186.4 grams). Given the differences in both the quantity and per-piece weight estimate, what actually separates the Government's proposed findings from Defendant's proffer is approximately 337 rocks or pieces, or approximately $13,480 in gross income over the one year in question. Compare Def. Brief at 5 with Gov't Brief at 3.

conspiracy found in the possession of Gordon on January 9, 2015 totaled approximately $28,935.

(6) While the Court recognizes that Gordon was one of multiple co-conspirators, there is no reliable evidence that allows the Court to determine precisely how the gross income of the conspiracy was divvied up among Gordon and his co-conspirators.[2]

(7) Nonetheless, the Court finds that during the twelve-month period measured from January 9, 2014 to January 9, 2015, Marco Gordon personally derived gross income in excess of $14,500 from the pattern of criminal conduct underlying Counts I & IV. This conclusion is supported not only by the estimated quantities sold during the conspiracy but also by the amount of cash and cocaine base seized on January 9, 2015.

(8) Given the Government's concession and the preponderance of the evidence regarding the amounts Gordon and Joiner paid Russell Gordon to procure the cocaine base for sale, the Court finds that Gordon's net income for the period in question was less than $14,500. (See Gov't Brief at 3; PSR ¶ 29.)

(9) The Court acknowledges that Gordon proffered that he made a living as an "in-home barber" earning between $200 and $600 a week during the time period in question (PSR ¶ 72), although this could not be verified. In fact, at sentencing, counsel acknowledged that Gordon "often [cut hair] for free, other people paid him." (11/6/15 Sentencing Tr. (ECF No. 319) at 19.) Given the more detailed, corroborated information regarding the amounts Defendant made from sales of cocaine base during 2014 and the early days

---

[2] The Court notes that Defendant's brief proffers that the Court should estimate that Gordon kept a fifth of the income, which would yield personal gross income of $17,896. See Def. Brief at 5. The Government proffers that the Court should find that Gordon kept a third of the income, which would yield personal gross income of $29,826.67. See Gov't Brief at 3. The Court notes that both amounts exceed the $14,500 required under the formula listed in U.S.S.G. § 4B1.3 cmt. 2.

3

of 2015, the preponderance of the credible evidence presented at sentencing does not support a finding that Gordon's primary occupation was "barber" for the period in question. Rather, the Court finds that his primary occupation for the period in question was drug dealer and that his personal gross income from that occupation exceeded $14,500 for the year prior to his arrest.

Given these findings and using a gross income approach, the Court reiterates its conclusion that the preponderance of the evidence supports a livelihood enhancement under U.S.S.G. § 2D1.1(b)(15)(E).

By way of further explanation, the Court concludes that a plain reading of "derived income" in the Guidelines calls for the consideration of gross income, rather than net income. U.S.S.G. § 4B1.3 cmt. 2; but see Lee v. United States, 939 F.2d 503, 504 (7th Cir. 1991) (concluding net income is the relevant figure). In the absence of specific guidance in the Guidelines regarding how to calculate net income for the many offenses covered by U.S.S.G. § 2D1.1, the Court is ill-equipped to determine what qualifies as a deductible expense versus what is more properly viewed as a distribution of profits.

The record, along with the supplemental briefing, here provides a telling example of how a sentencing court could end up down a rabbit hole of accounting issues if it were to attempt a net income calculation based on a preponderance of the evidence available at sentencing. First, the Government asserts that a calculation of net income could be achieved by simply deducting the cost paid to acquire the cocaine base that was distributed, which the Government pegs at $30 per $40 piece. See Gov't Brief at 3. Defendant, however, takes a more expansive view of the expenses that might be deducted from Defendant's gross income to include various amounts paid to or spent on a cooperating witness. See Def. Brief at 4. Among the expenses that Defendant invites the

Court to consider deducting are Gordon's purchase of "two flat screen televisions and a futon" for a cooperating witness in 2014.[3] (PSR ¶ 28.) The cooperating witness explained that these purchases were made in exchange for Gordon being allowed to store a safe with cocaine base at his apartment.[4] (Id.)

Even assuming that monies expended by Gordon on such a barter might qualify as deductible expenses, the record is devoid of any evidence regarding how much was actually expended on the purchase of these three items. While it is the Government's burden to prove the application of a sentencing enhancement by a preponderance of the evidence, the Government may frequently have little evidence to offer regarding a drug dealer's expenses, especially when those expenses are cash payments or cash purchases made with drug proceeds. See, e.g., United States v. Alphas, 785 F.3d 775, 784 (1st Cir. 2015) (noting that "the government bears the burden of proving the applicability of a sentencing enhancement by preponderant evidence"). Thus, assuming the Court were required to make a net income finding based on a preponderance of the evidence, it is not clear who should bear the burden of production for any deductible amounts in order to calculate whether the threshold for the livelihood enhancement is met. Here, at sentencing, Defendant's counsel argued for the deduction of "all of the business expenses that would be involved in dealing cocaine" but offered no numbers or evidence that would support a specific deduction. 11/6/15 Sentencing Tr. (ECF No. 319) at 18.

---

[3] The Court recognizes that the $3,800 net income figure ultimately proffered in Defendant's Brief does not include this expenditure. See Def. Brief at 5.

[4] In the Court's view, this evidence showing amounts expended by Gordon in furtherance of the conspiracy is relevant only as further evidence of the amount of income that was being derived from the conspiracy. See, e.g., United States v. Morris, 791 F.3d 910, 914 (8th Cir. 2015) (relying on evidence that defendant paid rent on time, purchased several businesses, and paid for a car and home repairs without any other reported income to justify income sufficient to support a livelihood enhancement).

In any event, the Court notes that if the livelihood enhancement were not applied in this case, Gordon would be left with an offense level of 32 and a criminal history category of III, which yields an advisory guideline range of 151 to 188 months. Even with a higher guideline range of 188 to 235 months, the Court originally determined that the appropriate variant sentence for Gordon was 132 months. Even without the livelihood enhancement, the Court would have imposed this same sentence. In short, giving full consideration to all of the additional factual findings contained in this Order, as well as all of the factors required under 18 U.S.C. § 3553(a), the Court concludes that a sentence of 132 months is appropriate for Marco Gordon.

SO ORDERED.

/s/ George Z. Singal  
United States District Judge

Dated this 27th day of January, 2017.